IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| **SELECT SECTOR SPDR TRUST,** a Massachusetts trust, <br><br> Plaintiff, <br><br> v. <br><br> **POWERSHARES EXCHANGE-TRADED FUND TRUST II,** a Massachusetts trust; **INVESCO POWERSHARES CAPITAL MANAGEMENT, LLC,** a Delaware corporation; and **INVESCO AIM DISTRIBUTORS, INC.,** now known as **INVESCO DISTRIBUTORS, INC.,** a Delaware corporation, <br><br> Defendants. | **Civil Action No. _____** |

## ORIGINAL COMPLAINT

Plaintiff Select Sector SPDR Trust, for its Complaint against Defendants PowerShares Exchange-Traded Fund Trust II, INVESCO PowerShares Capital Management, LLC, and INVESCO AIM Distributors, Inc., now known as INVESCO Distributors, Inc., alleges as follows:

### I. THE PARTIES

1.  Plaintiff Select Sector SPDR Trust is a Massachusetts trust having a principal place of business at One Lincoln Street, Boston, Massachusetts 02111 ("the Trust").

2.  Upon information and belief, Defendant PowerShares Exchange-Traded Fund Trust II is a Massachusetts trust having a principal place of business at 155 Federal Street,

Boston, Massachusetts 02110-1727 ("PowerShares") and may be served with this Complaint and Summons by hand service upon its President, Mr. Andrew Schlossberg, 301 W. Roosevelt Road, Wheaton, IL 60187.

3. Upon information and belief, Defendant INVESCO PowerShares Capital Management, LLC, is a Delaware corporation having a principal place of business at 301 West Roosevelt Road, Wheaton, Illinois 60187 ("INVESCO") and may be served with this Complaint and Summons by hand service upon its registered agent, CT Corporation System, 208 S. LaSalle Street, Suite 814, Chicago, IL 60604.

4. Upon information and belief, Defendant INVESCO AIM Distributors, Inc. is now known as INVESCO Distributors, Inc. and is a Delaware corporation having a principal place of business located at 11 Greenway Plaza, Suite 100, Houston, Texas 77046-1173 ("ID") and may be served with this Complaint and Summons by hand service upon its registered agent, CT Corporation System, 350 N. St. Paul Street, Suite 2900, Dallas, TX 75201-4234.

5. PowerShares, INVESCO and ID are collectively referred to herein as "PII," unless otherwise stated.

## II.  JURISDICTION AND VENUE

6. This action arises under § 43(a) of the Trademark Act of July 5, 1946, as amended, commonly known as the Lanham Act, 15 U.S.C. § 1051, et seq., and the common law of the State of Texas.

7. The Court has subject matter jurisdiction over all asserted claims under 15 U.S.C. § 1121, 28 U.S.C. §§ 1331, 1332 (as the value of the sought injunction exceeds $75,000) and 1338, and 28 U.S.C. § 1367.

8. The Court has personal jurisdiction over PowerShares, INVESCO and ID as all transact business in this judicial district, as Plaintiff's claims arise from Defendants' transactions of business in this judicial district, as Plaintiff's claims arise from Defendants' commission of tortious acts in this judicial district, and as Plaintiffs are being damaged in this judicial district.

9. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391, as well as 28 U.S.C. § 1400(b).

### III. GENERAL ALLEGATIONS

#### A. The Trust And Its Business

10. The Trust is a registered, open-ended management investment company organized as a series trust. The Trust was formed in 1998. The Trust offers for sale a defined interest in a number of different asset portfolios. Each of these portfolios is comprised of securities issued by companies which have certain pre-defined characteristics and all of which operate in a related field. Each portfolio is legally considered an Exchange Traded Fund ("ETF"), an investment vehicle which typically has low cost, tax efficiency and stock-like features.

11. The ETFs offered by the Trust provide investors an undivided interest in a pool of securities and thus are similar in many ways to traditional mutual funds. Unlike a mutual fund, however, a share in the ETF can be bought and sold throughout the day like stocks on a securities exchange or in some circumstances directly from the Trust.

12. Since inception, the Trust has operated nine separate ETF investment products. Each of these ETF products holds equities with identified companies who trade in certain identified types of goods or services, referred to in the trade as "market sectors." When one purchases a share of a given ETF, s/he is purchasing a percentage share of each company who participates in the designated "market sector" of that ETF.

13. Each of the nine ETFs offered by the Trust holds equities of companies listed in the Standard & Poor's 500 Composite Stock Index, a large cap stock index ("S&P 500"). The ETF sector identification names and the symbols under which each of the Trust's ETF Sector products, *i.e.* share of the ETF, have been bought and sold since 1998 are set forth below:

| Name of Market Sector | Symbol |
|---|---|
| Consumer Discretionary | XLY |
| Consumer Staples | XLP |
| Energy | XLE |
| Financial | XLF |
| Healthcare | XLV |
| Industrial | XLI |
| Materials | XLB |
| Technology | XLK |
| Utilities | XLU |

14. The identity of individual equities held within each of the Trust's ETFs has been selected by Merrill Lynch, Pierce, Fenner & Smith, Inc. ("Merrill Lynch"), in consultation with Standard & Poor's ("S&P") from the universe of companies represented by the S&P 500. The composition and weighting of the stocks included in these ETFs can be expected to be different from the composition and weighting of stocks included in any similar S&P 500 sector index that is published and disseminated by S&P or others.

15. Each of the nine ETFs offered by the Trust were originally listed on the American Stock Exchange, which subsequently migrated such listings to New York Stock Exchange Arca ("NYSE Arca") in relation to the Acquisitions of the American Stock Exchange by Affiliates of the NYSE Arca. Accordingly, investors can now buy and sell shares in the ETFs offered by the Trust at market price on the NYSE Arca. Financial institutions and other authorized participants may, if desired, also purchase and sell shares of these ETFs directly from the ETF itself in 50,000 share blocks. These blocks are called "Creation Units" in the trade when purchased and "Redemption Units" when sold.

16. ALPS Fund Services, Inc. ("ALPS"), a registered broker-dealer, has since 1998 been and remains exclusively responsible for distribution of shares in each ETF owned by the Trust. In this role, ALPS has had and continues to have the exclusive right from the Trust to receive all orders for purchase of shares in each of the ETFs offered by the Trust and to solicit authorized participant agreements which facilitate purchase and sale of Creation Units by authorized participants. ALPS has also been exclusively authorized by the Trust to be responsible for taking action necessary to grow the Trust's assets, including coordinating, managing and implementing all advertising, marketing and promotion of the Trust's ETFs.

17. Information concerning the Trust's nine ETFs can be found at www.sectorspdr.com. Prominently displayed on the home page of that site is a box in which the Trust's nine XL symbols and related information are displayed in rotating succession. Specifically, the Trust's XL symbols and the particular sector with which they are identified, such as "Consumer Staples-XLP," is periodically prominently displayed within the box. Also, the XL symbols and sector name are superimposed over an icon which represents the sector. For the Consumer Staples sector, the symbol happens to be a shopping cart.

### B. Protectable Rights In The ETF Symbols

18. The Trust has invested substantial time, creative effort and money in developing an association in the mind of investors between the particular symbols under which the Trust's ETFs are offered and the financial product the symbol actually represents. Specifically, the Trust has spent millions of dollars generating, maintaining and expanding the market for its nine ETFs. These efforts have primarily, but not exclusively, been accomplished through various sales and national marketing activities. These efforts have included print, outdoor, radio and TV advertising and extensive public relations and website activities which often focused on the use of the nine different "XL" family of symbols, each one of which is associated with one of nine different market sectors. Further, the Trust's ETFs are constantly being referred to in financial reporting articles and reports. Some of these references concern the presentation of one or more members of the family of the Trust's ETF symbols and associated ETF share price scrolling across the bottom of financial news programs aired on television. At other times, these references are comparing the stock price of a particular company held within a particular ETF, with the performance of that ETF sector as a whole. As a result of these efforts and activities, the Trust has become the recognized leader in the sector ETF financial product space, holding more than $30 billion dollars in assets through the nine members of the "XL" family of ETFs.

19. Given the above-referenced events and activities, it is probably not surprising that purchasers of ETFs have now come to associate the Trust's specific ETF symbols as representing a particular source and quality of ETF product and/or the type of assets held within the Trust's ETFs. In fact, each of the Trust's ETFs are known by their particular "XL"-based ETF symbol more than they are known by their full name, the "Select Sector SPDR ETFs" -- particularly in the financial services and trading community.

20.     As a result of its advertising and sales efforts and years of superior execution, the Trust has developed substantial significant investor recognition, trust, loyalty and goodwill in and to its family of nine ETFs represented by the Trust's nine separate "XL" symbols.  These efforts have resulted in extremely high liquidity for shares in each of the nine ETFs (with an average of 25 million shares of each of the nine ETFs (approximately 225,000,000 shares total) being bought and sold each trading day in 2009).  The high liquidity translates into better trade executions and lower trade costs for investors, with the typical spread between bid (the price someone will agree to buy a share) and offer (the price someone will agree to sell a share) often being only $0.01.

21.     Based upon its continuous and non-interrupted use of each of the nine "XL" family members for more than a decade in interstate commerce, investors have come to associate that family of symbols and each individual symbol exclusively with the Trust's financial products.  The Trust has now thus acquired strong common law trademark rights and/or common law business values in and to each member of the family of nine "XL" symbols (collectively, "the XL Family of Marks").

### C.     Defendants' Infringing Conduct

22.     INVESCO entered the ETF business in 2003, offering products under the brand PowerShares.  Since that time, INVESCO has created and offered to investors more than 100 separate ETF investment products.  Prior to April 2010, virtually all of these ETF investment products were offered in connection with a symbol which began with the letter "P."  (*See* Exhibit A.)  Upon information and belief, use of the letter "P" as the lead letter of these symbols was to alert the investing public to the fact that the investment product to which the symbol was

associated emanated from PowerShares. Not one ETF investment product offered by INVESCO prior to April 2010 began with the letters "XL."

23. On April 7, 2010, PowerShares, through INVESCO and ID, introduced to the market a separate series of nine ETFs. (*See* Exhibit B.) These new ETFs are traded on the NASDAQ stock exchange. Unlike the Trust's ETFs, each of PII's ETFs are constructed to track a subset of companies of the Standard & Poor's 600 Composite Stock Index, a small cap stock index ("S&P 600"). Not a single stock listed on the S&P 600 is listed on the S&P 500. Upon information and belief, stocks listed on the S&P 600 are more volatile and typically a riskier investment than those listed on the S&P 500.

24. Upon information and belief, INVESCO and ID are currently engaging in various marketing efforts, including advertising and website activities, publicizing PowerShares' nine new ETFs. Upon information and belief, ID is the exclusive distributor of the PowerShares' nine new ETFs.

25. The symbols adopted by PowerShares and advertised by INVESCO and ID to represent PowerShares' new market sector ETFs do not begin with the letter "P" as was the tradition. Rather, the new symbols are virtually identical to the XL Family of Marks used by the Trust to identify its similar but different sector-selected ETFs. Indeed, all PII has done is add the letter "s" to each one of the Trust's nine XL Family members to arrive at its assigned symbols:

| Name of Market Sector | Symbol |
|---|---|
| Consumer Discretionary | XLYS |
| Consumer Staples | XLPS |
| Energy | XLES |
| Financial | XLFS |
| Healthcare | XLVS |
| Industrial | XLIS |
| Materials | XLBS |
| Technology | XLKS |
| Utilities | XLUS |

26.     Upon information and belief, PII's nine new ETFs have minimal liquidity, currently with only approximately 7,700 shares of each individual ETF (i.e., approximately 69,000 total shares of all nine of the ETFs) being bought and sold in a typical trading day. The lack of liquidity will, over time and upon information and belief, cause the spread between the bid and offer prices for shares in these nine ETFs to increase, ultimately increasing the cost to buy and sell these securities to investors. Further, the cost of owning a share (annual expenses) of one of PII's nine ETFs is approximately 38% greater than the cost of ownership for a share of one of the Trust's ETFs. In short, investors who purchase PII's ETFs are not acquiring an investment product of the same quality or nature of the products offered by the Trust under its XL Family of Marks.

27. Information concerning all of PII's ETFs can be found at www.powershares.com. Rather than focus on ETFs which PII has sold for years upon its website, it currently is focusing the home page of that website upon its nine new ETFs. Indeed, just as the Trust has done on its website, PII now includes a prominent box on its site's home page. In that box, PII periodically rotates the particular "XL" mark it has associated with each of the nine sector ETFs it now offers. PII has also associated a different icon in connection with each different mark and sector name. Just as on the Trust site, the icon used to represent the consumer staples sector is a shopping cart. PII has copied the Trust's marketing tool in an attempt to further trade on the Trust's goodwill and business values.

28. The symbols adopted by PII to represent their new nine ETFs are confusingly similar to the Trust's XL Family of Marks, resulting in damage to the value of that Family of Marks, the Trust's reputation and potential investors, generally. Representatives of the Trust thus contacted Edward Knight, Executive Vice President, General Counsel and Chief Regulatory Officer of NASDAQ OMX, asking that PII's symbols be rescinded and changed to a less confusing symbol. NASDAQ refused the request and, upon information and belief, advised PII of the Trust's position. (*See* Exhibit C.)

29. Representatives of the Trust next contacted Mr. Benjamin Fulton, INVESCO's Managing Director of Global ETFs, shortly after PII introduced their nine ETF products offered under symbols which are confusingly similar to the Trust's XL Family of Marks, asking that PII immediately discontinue use of those confusing symbols. Mr. Fulton declined to honor that request. Given that PII have recently shown they are ready, willing and able to change the name of ETFs and even the indices upon which those ETFs are listed when such a change suits their competitive needs (*see* Exhibit D), one can only assume that PII chose not to change its

*Plaintiff's Original Complaint* 10

confusingly similar symbols when asked by the Trust because to do so would not suit PII's competitive needs.

30. Upon information and belief, PowerShares adopted the nine confusingly similar ETF symbols with the input and prompting of INVESCO and ID, and with the intent to obtain free publicity from the Trust's efforts and immediate market recognition and thus easy penetration for its new and untested ETFs. Upon information and belief, PII proceeded to market with an intent to trade upon the goodwill and utilize the preexisting affiliation between the Trust's XL Family of Marks and ETF financial products pioneered by the Trust. The ETF symbols being used by PII, because they are being applied to highly related financial products, are likely to cause investors to be confused into wrongfully believing that their financial products are those of the Trust or that there is some association between the Trust and PII.

### IV. FIRST CLAIM FOR RELIEF
(§43(a) of the Lanham Act)

31. The Trust incorporates paragraphs 1 through 29 as though fully set forth herein.

32. PII has promoted and sold and continue to promote and sell in interstate commerce shares in nine separate ETFs under and/or in association with symbols which are confusingly similar to the XL Family of Marks. PII's actions have created a likelihood of investor confusion as to the affiliation, connection or association of themselves with the Trust and as to the origin, sponsorship or approval of PII's financial products with or by the Trust.

33. PII's unauthorized use of the XL Family of Marks, in connection with the marketing and sale of shares in its nine separate ETFs, is a willful violation of § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

34. The Trust has been and continues to be harmed irreparably by PII's actions and has no adequate remedy at law.

## V.  SECOND CLAIM FOR RELIEF
(Common Law Trademark Infringement)

35. The Trust incorporates paragraphs 1 through 33 as though fully set forth herein.

36. PII's actions as described above have caused and are likely to cause confusion with the Trust's established and superior rights in and to the XL Family of Marks and otherwise unfairly compete with the Trust.  PII's actions have created a likelihood of consumer confusion as to the affiliation, connection or association with the Trust and/or as to the origin, sponsorship or approval of PII and/or its new ETFs by the Trust.  As such, PII's actions constitute trademark infringement under common law.

37. PII's unlawful actions were committed with willful and wanton disregard for the Trust's superior rights.

38. The Trust has been and continues to be harmed irreparably by PII's actions and has no adequate remedy at law.

## VI.  THIRD CLAIM FOR RELIEF
(Misappropriation of Business Values)

39. The Trust incorporates paragraphs 1 through 37 as though fully set forth herein.

40. The Trust owns valid and protectable business values in and to the XL Family of Marks.

41. PII's actions as described above have caused and are likely to diminish the value and thus damage to the Trust's XL Family of Marks and constitute misappropriation of the Trust's pre-established and superior business values.  As such, PII's actions constitute unfair competition by misappropriation under common law.

42. PII's wrongful actions were committed with willful and wanton disregard for the Trust's rights.

43. The Trust has been and continues to be harmed irreparably by PII's actions and has no adequate remedy at law.

## VII. PRAYER FOR RELIEF

**WHEREFORE,** the Trust prays for judgment in its favor and against PII as follows:

A. That PII, their agents, servants, officers, directors, employees, attorneys, privies, representatives, successors, assigns and parent and subsidiary corporations or other related entities, and any and all persons in act of concert or participation with any of them, be preliminarily and permanently enjoined from:

(1) any further infringement of any member of the Trust's XL Family of Marks;

(2) any further direct or indirect use of the Trust's XL Family of Marks or any mark that is confusingly similar thereto;

(3) performing any action or using any mark, symbol or slogan that is likely to cause confusion or mistake, or to deceive or otherwise mislead the trade and/or the public into believing that the Trust and PII are one and the same or in some way connected, or that the Trust is the sponsor of PII's XL-branded ETFs, or that PII are in some manner affiliated or associated with, or under the supervision or control of the Trust, or that PII's financial products originate with the Trust or are connected or offered with the approval, consent, authorization, or under the supervision of the Trust; or

(4) any other conduct constituting unfair competition with the Trust.

    B. That PII be ordered to deliver up to the Trust for destruction, or certify destruction of, all materials that bear one or more of the Trust's XL Family of Marks or any confusingly similar mark;

    C. That PII be ordered to file with the Court and serve on the Trust, within thirty (30) days after the entry of an injunction, a report in writing, under oath, setting forth in detail the manner and form in which PII has complied with any ordered injunction;

    D. That the Trust be awarded costs and expenses of suit, including reasonable attorneys fees and expert witness fees; and

    E. That such other and further preliminary and permanent relief be awarded as the Court deems appropriate.

**SHIELDS, BRITTON & FRASER**

A Professional Corporation

By: /s/ John D. Fraser_____
John D. Fraser
Attorney-in-Charge
State Bar No. 07393550
Southern District Application Pending
5401 Village Creek Drive
Plano, Texas 75093
Phone: 469.726.3070
Fax: 972-788-4332
E-Mail: Jfraser@sbflegal.com

**Of Counsel**:
**SHERIDAN ROSS P.C.**
Robert R. Brunelli
    Colorado State Bar No. 20070
John R. Posthumus
    Colorado State Bar No. 20950
Patricia Y. Ho
    Colorado State Bar No. 38013
1560 Broadway, Suite1200
Southern District Pro Hac Vice
    Applications Pending
Denver, CO 80202
Phone: 303-863-9700
Facsimile: 303-863-0223

**ATTORNEYS FOR PLAINTIFF
SELECT SECTOR SPDR TRUST**